UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03CV-676-H

TOWER AUTOMOTIVE PRODUCTS
CO., INC.                                                                                    PLAINTIFF

V.

FREELAND HARRIS CONSULTING
ENGINEERS OF KENTUCKY, INC., et al.                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Tower Automotive Products Co., Inc., ("Tower") alleges several claims arising out of a

failed construction project at its Bardstown, Kentucky, manufacturing facility: breach of

contract, breach of warranty, and negligence against Freeland Harris Consulting Engineers of

Kentucky, Inc. ("FHCE"); negligence against FHCE engineer Lyman E. Alexander; breach of

contract and breach of warranty against HEC Manufacturing, Inc. ("HEC").  FHCE/Alexander

and HEC both filed cross-claims against each other, seeking apportionment or indemnity.  Both

Defendants have moved for summary judgment.

Summary judgment is appropriate where "there is no genuine issue as to any material fact

and . . . the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In reviewing a motion for summary judgment, the

Court must determine whether, upon viewing the facts in the light most favorable to the

non-moving party, "the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The facts of record contain significant disputes which make summary judgment inappropriate in this case.

Alexander, an engineer employed by FHCE, designed Tower's Bardstown facility and continued to work on design projects there on an ongoing basis.  The design of the facility included large openings in the floor, or pits, in which the manufacturing presses sat.  In late 2000, Tower asked Alexander to design a cement cover for one of the unused pits, thereby creating more floor space to use for storage.  Ultimately, the cover – designed by Alexander and constructed by HEC – collapsed under great weight, causing damage and giving rise to this lawsuit.

Tower and Alexander present widely divergent accounts of their communications regarding the project.  Alexander says Clyde Waggoner of Tower contacted him by telephone and asked him to design the cover.  Alexander asked whether the cover should be designed to the same specifications as certain trench covers used on other parts of the floor.  Tower agreed that would be appropriate.  Alexander adapted the trench cover design for use as the press pit cover and sent a proposal drawing to construction firm HEC.  He did not have any more discussions with Tower or visit the facility in connection with the project.

Tower, on the other hand, says it communicated with Alexander about the project by phone at least six times, and that Alexander visited the facility to view the location of the design.  Tower says it explained to Alexander that it intended to store dies weighing 50,000 pounds each and stacked two high on the covers.  Tower says it never agreed that the design for the trench cover would suffice for the press pit cover.  Both sides support their accounts with deposition testimony.

2

Another large area of dispute involves whether construction firm HEC correctly carried out Alexander's design.  Alexander says HEC deviated from his design by omitting metal "stiffeners" necessary to strengthen the load-bearing capacity of the cover.  Had HEC followed the design, the cover would have withstood the load.  This issue appears to turn on differing interpretations of Alexander's proposal drawing.  Alexander contends that the proposal required use of stiffeners at each of the four steel beams undergirding the cover.  HEC's and Tower's experts, and HEC President Leo Essex, dispute that the proposal required stiffeners.  HEC did not use stiffeners in constructing the covers.  Additionally, HEC made other changes to the design which it says Alexander approved, and which Alexander denies approving.

Yet another area of dispute focuses on whether HEC should have submitted "shop drawings" to Alexander before proceeding with construction of the project.  Alexander contends that professional standards require such drawings because they allow the designer of the project to confirm whether the contractor's work will meet the designer's specifications.  Tower's expert and HEC's Leo Essex both deny that the circumstances of this project required shop drawings.

The foregoing describes only some of the larger factual disputes.  Based on the facts of record, a reasonable jury could reach different conclusions about the material issues in this case, such as what exactly Alexander agreed to design, whether he met his professional standard of care for the design, and whether HEC breached any duty to Tower in constructing the design.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion for summary judgment filed by Freeland Harris Consulting Engineers of Kentucky, Inc. and Lyman E. Alexander, is DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment filed by HEC

3

Manufacturing, Inc. is DENIED.

Trial remains set for February 21, 2006.

cc:     Counsel of Record